

FILED

NOV 19 2025

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>TRACY LEE HURST-CASTL,<br>　　　　　　Debtor. | BAP No. NV-25-1045-CNB<br><br>Bk. No. 24-14610-gs |
| TRACY LEE HURST-CASTL,<br>　　　　　　Appellant,<br>v.<br>LONG TERM CAPITAL PARTNERSHIP<br>VI, LLC; FCI LENDER SERVICES, INC.<br>DBA FCI AS SERVICER FOR LONG<br>TERM CAPITAL PARTNERSHIP VI,<br>LLC,<br>　　　　　　Appellees. | MEMORANDUM[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Gary A. Spraker, Bankruptcy Judge, Presiding

Before: CORBIT, NIEMANN, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Chapter 11[1] debtor Tracy Lee Hurst-Castl ("Ms. Hurst-Castl")

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the

appeals the bankruptcy court's order granting creditor Long Term Capital Partnership VI, LLC's ("Long Term") in rem relief from the automatic stay pursuant to § 362(d)(4) as to Ms. Hurst-Castl's rental property. Ms. Hurst-Castl also appeals the orders denying her subsequent motions to reconsider and vacate the stay relief order. Because the bankruptcy court did not abuse its discretion in granting Long Term in rem relief from the automatic stay or in denying Ms. Hurst-Castl's motions to vacate, we AFFIRM.

## FACTS[2]

On November 15, 2024, Long Term sought in rem relief from the automatic stay pursuant to § 362(d)(4) as to Ms. Hurst-Castl's rental property on White Fir Way in Mount Charleston, Nevada ("Property").[3] Long Term asserted that Ms. Hurst-Castl had made no payments on the loan secured by the Property since 2008. Long Term further argued that in addition to the significant default under the loan, Ms. Hurst-Castl had initiated litigation and filed several bankruptcies to avoid repaying the

---

Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and related proceedings. *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (citation omitted); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Formerly known as Rainbow Canyon Boulevard, Mount Charleston, Nevada.

loan and to interfere with pending foreclosures of the Property. Long Term described the many unsuccessful causes of action initiated by Ms. Hurst-Castl in various courts throughout the years. Long Term also described Ms. Hurst-Castl's four previous bankruptcies and argued that each was filed in close temporal proximity to a pending foreclosure, none was filed for a valid bankruptcy purpose, and each was dismissed before discharge. Long Term argued that it was entitled to in rem stay relief because the current bankruptcy (Ms. Hurst-Castl's fifth) was filed as part of Ms. Hurst-Castl's continuing scheme to delay, hinder, and defraud creditors. The court granted Long Term's request to take judicial notice of the original loan documents and all subsequent assignments.[4]

Ms. Hurst-Castl opposed Long Term's motion for relief from stay. Ms. Hurst-Castl did not specifically dispute that she sought and received a $2,250,000 loan from Washington Mutual Bank in 2007, that the loan was secured by a deed of trust on the Property, that she had not made any payments on the loan since 2008, and that the loan had been assigned several times since its origination. Rather, Ms. Hurst-Castl alleged that Washington Mutual (the initial secured creditor) failed to properly assign the original note. Thus, according to Ms. Hurst-Castl, all holders of the note after Washington Mutual, including Long Term, had no legal authority to enforce the note or foreclose on her rental Property which secured the note.

---

[4] The bankruptcy court also took judicial notice of matters filed in Ms. Hurst-Castl's previous bankruptcy cases.

Therefore, Ms. Hurst-Castl argued, because Long Term had no legal authority, the bankruptcy court could not grant Long Term the requested relief.

Long Term replied that Ms. Hurst-Castl's opposition lacked merit. Long Term explained that the validity of the original loan documents and the propriety of the subsequent assignments had been the subject of a final decision in state court litigation and could not be collaterally attacked.

The bankruptcy court heard oral argument on the motion on December 16, 2024, and took the matter under submission.

## A.    Bankruptcy court's oral ruling

On January 10, 2025, the bankruptcy court made an oral ruling granting Long Term's requested relief. The bankruptcy court's oral ruling included *inter alia* the following findings of facts and conclusions of law.

### 1.    History

#### a.    The loan and immediate default

The bankruptcy court found that on June 1, 2007, Ms. Hurst-Castl obtained a $2,250,000 loan from Washington Mutual Bank. The obligation was evidenced by a promissory note and was secured by a deed of trust against the Property (together, the note and deed of trust, the "Loan"). The Loan documents were properly recorded and "Washington Mutual ultimately endorsed the promissory note in blank, thereby making it payable to any party holding the promissory note." The bankruptcy court further found that Ms. Hurst-Castl did not make any payment on the note

4

after 2008 and thus "defaulted on the loan in 2008."

On March 20, 2009, the holder and servicer of the Loan at the time ("Loan Creditor") recorded the first notice of default and trustee's sale as to the Property.

### b. Ms. Hurst-Castl's first three bankruptcy cases.

On June 8, 2010, Ms. Hurst-Castl filed her first bankruptcy case. The case was dismissed just two months later because Ms. Hurst-Castl failed to file any schedules or statements. Based on the timing, the bankruptcy court determined there was a "reasonable inference" that Ms. Hurst-Castl filed the first bankruptcy case to interfere with the Loan Creditor's efforts to collect on the defaulted Loan through foreclosure.

Less than two months after the dismissal of her first bankruptcy case and three days before a scheduled nonjudicial foreclosure of the Property, Ms. Hurst-Castl filed her second bankruptcy case. During the pendency of the second bankruptcy case, the Loan Creditor sought and was granted relief from the automatic stay to conduct a nonjudicial foreclosure. The bankruptcy court noted that Ms. Hurst-Castl's unsuccessful opposition to the Loan Creditor's motion did not dispute the validity of the Loan or the Loan Creditor's right to enforce the terms of the Loan. Rather, Ms. Hurst-Castl opposed the motion on the basis that the Loan Creditor allegedly failed to establish a lack of equity in the Property. Ms. Hurst-Castl's second bankruptcy case was dismissed in 2012 based on her failure to file required reports or confirm a chapter 11 plan.

Just a few months later, Ms. Hurst-Castl filed her third bankruptcy case. The Loan Creditor filed a motion for adequate protection payments or in the alternative, relief from the automatic stay to continue the nonjudicial foreclosure. Despite Ms. Hurst-Castl's objections, the bankruptcy court in Ms. Hurst-Castl's third bankruptcy determined that the Loan Creditor had presented sufficient evidence to support its claim against the Property and ordered Ms. Hurst-Castl to make monthly adequate protection payments in the amount of $11,997.58. When Ms. Hurst-Castl failed to make the adequate protection payments, the Loan Creditor was granted relief from the automatic stay to pursue state court remedies related to the Property. Ms. Hurst-Castl's third bankruptcy case was dismissed on May 6, 2014.

### c. Ms. Hurst-Castl's state court litigation

The bankruptcy court found that Ms. Hurst-Castl's first three bankruptcy cases each affected and interfered with the secured creditor's ability to enforce the terms of the Loan and each bankruptcy case was without any valid bankruptcy purpose. The bankruptcy court noted that when the third bankruptcy case was unsuccessful, Ms. Hurst-Castl "shifted her focus . . . to state court litigation." The bankruptcy court then detailed Ms. Hurst-Castl's various unsuccessful efforts in state court to invalidate the Loan and quiet title to the Property. The bankruptcy court found that the Nevada state court's December 4, 2020 decision with its detailed findings of fact and conclusions of law was a final and preclusive decision as to the validity of the Loan and the propriety of the subsequent

6

assignments of the Loan ("State Court Decision").[5]

The bankruptcy court summarized several findings in the State Court Decision. The bankruptcy court noted that the state court rejected Ms. Hurst-Castl's allegations that her signature was forged and the Loan invalid. The state court found that Ms. Hurst-Castl admitted she was not current on the Loan, that she included the Loan in her bankruptcy schedules, and that she had sought a loan modification at least three times since defaulting under the Loan. The state court determined that "[b]y accepting and realizing the benefits of the $2,250,000 loan, executing the deed of trust, and requesting multiple loan modifications," Ms. Hurst-Castl "ratified the note and her obligations therein." Additionally, the state court found her allegations of forgery, "not credible" based on the "overwhelming evidence." The evidence cited by the state court included her inconsistent positions in prior judicial proceedings. The state court specifically noted that although Ms. Hurst-Castl had "initiated numerous legal actions in an attempt to avoid repaying the Loan," she had "not [previously] assert[ed] that her signature on the note was a product of forgery." The state court also found that PennyMac (the Loan Creditor at the time) had provided sufficient evidence demonstrating it was the valid beneficiary and assignee under both the note and deed of trust. Finally, the

[5] Ms. Hurst-Castl appealed the State Court Decision to the Nevada Supreme Court on December 31, 2020. Despite being represented by counsel and being given eight extensions of time, Ms. Hurst-Castl failed to file an opening brief, and the appeal was dismissed on May 13, 2022.

state court determined that because Ms. Hurst-Castl could not prove she paid the full debt secured by the Property, her "quiet title action fail[ed] as a matter of law."

The bankruptcy court explained that because the state court's factual findings were "preclusive on those issues as actually and necessarily litigated between the parties," the bankruptcy court could rely on those factual findings. Specifically, the bankruptcy court relied on the findings that the Loan had been properly assigned and the Loan Creditor had legal authority to foreclose on the property.

### d. Ms. Hurst-Castl's fourth and fifth bankruptcy cases

On February 4, 2023, Ms. Hurst-Castl filed her fourth bankruptcy petition. Again, the Loan Creditor (now Long Term) was stayed from completing the foreclosure sale of the Property. On April 17, 2023, Long Term filed a proof of claim for approximately $4 million secured by the Property. Ms. Hurst-Castl objected to the claim. The bankruptcy court noted that Ms. Hurst-Castl's objection did not dispute that she owed money to Long Term or that the debt was secured by the Property. Rather, she argued the debt was time-barred by the applicable statute of limitations. Ms. Hurst-Castl argued that the declaration of default had accelerated the Loan. The bankruptcy court in Ms. Hurst-Castl's fourth bankruptcy rejected this argument citing two recent Nevada Supreme

8

Court opinions.[6] Long Term's claim was allowed because Ms. Hurst-Castl had not presented sufficient evidence to overcome the presumptive validity of the claim.

Ms. Hurst-Castl's fourth bankruptcy case was dismissed on December 12th, 2023. A trustee's sale of the Property was scheduled for September 18, 2024.

On September 3, 2024, just fifteen days before the scheduled trustee's sale, Ms. Hurst-Castl filed the underlying chapter 11 bankruptcy case—her fifth bankruptcy case.[7]

2. **The bankruptcy court's determination that Ms. Hurst-Castl's fifth bankruptcy case was filed as part of a scheme to hinder and delay creditors.**

After reciting Ms. Hurst-Castl's extensive litigation history, the bankruptcy court found that evidence existed to support each element necessary to grant in rem relief. Pursuant to Ninth Circuit law, to grant the requested in rem relief under § 362(b)(4), the court must find three elements are satisfied: (1) the debtor's bankruptcy filing was part of a scheme; (2) the object of the scheme was to delay, hinder, or defraud

---

[6] *Facklam v. HSBC Bank USA, N.A.*, 401 P.3d 1068 (Nev. 2017) and *LV Debt Collect, LLC v. Bank of N.Y. Mellon*, 534 P.3d 693 (Nev. 2023).

[7] Because Ms. Hurst-Castl filed the current bankruptcy case within one year of dismissal of her fourth bankruptcy case, the automatic stay would have expired "on the 30th day after the filing of the later case" pursuant to § 362(c)(3)(A). However, Ms. Hurst-Castl timely moved to extend the automatic stay pursuant to § 362(c)(3)(B). Long Term did not object and the bankruptcy court extended the stay.

creditors; and (3) the scheme must involve multiple bankruptcy filings affecting the subject property.[8]

The bankruptcy court determined that the third element was easily met as this was the fifth bankruptcy filed by Ms. Hurst-Castl which stayed the various efforts of the Loan Creditor to foreclose on the Property. As to the first and second elements–whether this bankruptcy was part of a scheme to delay, hinder, or defraud creditors–the bankruptcy court noted that "scheme" was not defined in the Code. However, the bankruptcy court relied upon Black's Law Dictionary that defined the "term in context of § 362(d)(4), to mean an intentional artful plot or plan to delay, hinder, or defraud creditors."

The bankruptcy court determined that Ms. Hurst-Castl's actions, taken together, presented a clear picture that she had used bankruptcy and state court litigation as part of a scheme to hinder, delay, and even "thwart all efforts of her secured creditor to foreclose on the secured debt." The bankruptcy court stated that "between 2014 and 2022," Ms. Hurst-Castl tried to obtain loan modifications while "simultaneously claiming that she did not owe the [Loan] [C]reditor any money and that there was no valid deed of trust." The bankruptcy court found that Ms. Hurst-Castl's inconsistent and unsupported positions pervaded her litigation and evidenced an intent to hinder and delay the secured creditor. The

---

[8] Citing *First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC. (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 870 (9th Cir. BAP 2012).

bankruptcy court specifically found that Ms. Hurst-Castl had "taken contradictory actions, seeking loan modifications in recognition of an obligation with creditors, while then disavowing any liability to secured creditors or their ability to collect on a debt that she has not paid on since 2008." The bankruptcy court determined that despite Ms. Hurst-Castl continuing to dispute the validity of the Loan, that issue was finally decided when—after a trial and appeal—the "state court denied her claims and expressly found the note and deed of trust to be valid and enforceable."

Based on the record, the bankruptcy court determined that the first two elements necessary to grant in rem relief were also met. The bankruptcy court found the current bankruptcy case was another legally and factually unsupported "run at challenging the underlying obligation and deed of trust" and was therefore part of a scheme to hinder and delay Long Term from foreclosing. Consequently, the bankruptcy court granted Long Term's in rem relief from the automatic stay pursuant to § 362(d)(4)(B).

On January 31, 2025, the bankruptcy court entered an order consistent with its oral ruling ("In Rem Relief Order"). With the automatic stay lifted, Long Term scheduled the trustee's sale of the Property for April 4, 2025.

B.    **Ms. Hurst-Castl's post-judgment activity**

Ms. Hurst-Castl filed an objection to the In Rem Relief Order, moved

11

to vacate it, and filed a motion to reconsider. The bankruptcy court denied the motions (together, the "Order Denying Motions to Vacate"). The bankruptcy court found Ms. Hurst-Castl's motions merely restated arguments previously presented and rejected and were insufficient to vacate the In Rem Relief Order.

Ms. Hurst-Castl timely appealed the In Rem Relief Order and the Order Denying Motions to Vacate.

## C. Ms. Hurst-Castl's post-appeal activity

After she filed her appeal, Ms. Hurst-Castl again objected to Long Term's proof of claim in the bankruptcy case. Ms. Hurst-Castl also filed various "emergency" motions to stay the In Rem Relief Order while the appeal was pending. None of the motions were resolved in her favor.

When the bankruptcy court refused to grant Ms. Hurst-Castl the relief she requested, she again initiated litigation in other courts to try to thwart the scheduled foreclosure. Ms. Hurst-Castl filed a complaint against Long Term in the U.S. District Court for the District of Nevada and another complaint in state court. The state court complaint was successfully removed by the foreclosure trustee to the District Court on April 29, 2025.[9]

In both federal cases, Ms. Hurst-Castl filed a flurry of "emergency" motions seeking to invalidate Long Term's security interest and halt the scheduled trustee's sale. As in the bankruptcy court, none of the motions

---

[9] Ms. Hurst-Castl continues to object to the removal. There is a pending motion in this case to have Ms. Hurst-Castl declared a vexatious litigant.

were successful.

The trustee sale was held on April 4, 2025, and Long Term purchased the Property and recorded a trustee's deed upon sale. Although an unlawful detainer action is pending, no judgment or writ of possession has been entered, and Ms. Hurst-Castl's tenants have not been evicted.

The federal case initiated by Ms. Hurst-Castl was dismissed on April 30, 2025. In dismissing her complaint, the District Court found that the claims were barred by the doctrine of res judicata. The District Court held that the order of the Nevada state court was "a final judgment on the merits that precludes any attempt by Ms. Hurst-Castl to challenge the validity of the Promissory Note and Deed of Trust, or the validity of the transfer to PennyMac, which was eventually transferred" to Long Term.[10]

Despite the completed foreclosure sale of the Property, Ms. Hurst-Castl continued filing motions related to the Property in her bankruptcy case.[11] The bankruptcy court denied the motions.

Ms. Hurst-Castl sought a stay and other relief from the BAP on July 18, 2025. The BAP denied the motion for stay and other requested relief on August 15, 2025. On October 6, 2025, the BAP denied Ms. Hurst-Castl's

---

[10] Ms. Hurst-Castl continues to file "emergency" motions in the federal case despite the fact that her complaint has been dismissed.

[11] For example, Ms. Hurst-Castl filed a renewed objection to the In Rem Relief Order, a consolidated motion to stay all proceedings, another motion to reconsider the In Rem Relief Order, and three additional motions objecting to the allowance of Long Term's claim.

emergency motion to stay all post-sale activities, and denied her motion to reconsider on October 17, 2025.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.[12]

## ISSUES

Whether the bankruptcy court abused its discretion by granting relief under § 362(d)(4).

Whether the bankruptcy court abused its discretion by denying Ms. Hurst-Castl's motions to vacate.

## STANDARDS OF REVIEW

We review the bankruptcy court's order granting stay relief for abuse of discretion. *In re First Yorkshire Holdings, Inc.*, 470 B.R. at 868; *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997) (explaining that whether a debtor acted with intent to hinder, delay, or defraud creditors is a factual finding reviewed for clear error).

We also review the bankruptcy court's decision to deny a motion to

---

[12] The Panel "cannot exercise jurisdiction over a moot appeal." *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014) (citations omitted). Long Term argues that the appeal is moot because there was a completed nonjudicial foreclosure sale of the Property in April 2025. However, despite the foreclosure and a pending unlawful detainer action, no judgment or writ of possession has been entered against the Property. Therefore, the appeal is not moot as to the in rem relief. *See e.g., Jiminez v. ARCPE 1, LLP (In re Jiminez)*, 613 B.R. 537, 544 n.8 (9th Cir. BAP 2020); *Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1128–30 (9th Cir. 2016).

vacate a judgment or order for an abuse of discretion. *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993) (explaining the standard of review is the same whether the motion for reconsideration is based on Civil Rule 59(e) or Civil Rule 60(b)). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    The bankruptcy court did not abuse its discretion in granting relief under § 362(d)(4).**

Section 362(d)(4) "permits the bankruptcy court to grant in rem relief from the automatic stay in order to address schemes using bankruptcy to thwart legitimate foreclosure efforts. . . ." *In re First Yorkshire Holdings, Inc.*, 470 B.R. at 870. If the order is properly recorded, it is binding in any bankruptcy case filed for the next two years. *Id.*

To grant relief under § 362(d)(4), the bankruptcy court must affirmatively find: (1) the bankruptcy filing was part of a scheme; (2) the object of the scheme was to delay, hinder, or defraud creditors; and (3) the scheme involved either (a) the transfer of an interest in real property without the secured creditor's consent or court approval, or (b) multiple bankruptcy filings affecting the property. *Id.* at 870-71.

On appeal Ms. Hurst-Castl has filed voluminous pleadings, yet, beyond her conclusory and repetitive allegations, Ms. Hurst-Castl fails to

identify specific legal errors or erroneous factual findings by the bankruptcy court. Rather, Ms. Hurst-Castl merely repeats previously considered and rejected arguments.

For example, Ms. Hurst-Castl continues to argue that there was insufficient evidence for the bankruptcy court to grant the relief. Ms. Hurst-Castl insists that she was entitled to, and was denied, an evidentiary hearing prior to the entry of the In Rem Relief Order. We disagree. The record indicates that the parties briefed the issue, and the bankruptcy court held a hearing on December 16, 2024, where both parties testified. Ms. Hurst-Castl has failed to establish that she was precluded from introducing evidence in support of her brief or at that hearing. Importantly, Ms. Hurst-Castl has not presented any credible evidence that controverts the bankruptcy court's findings.

Ms. Hurst-Castl also continues to dispute the validity of the Loan and the assignments of the Loan. However, the bankruptcy court found that the Loan's validity and transfers were finally determined by the Nevada state court in the State Court Decision and could not be collaterally attacked by Ms. Hurst-Castl. We agree.

The doctrine of issue preclusion applies in bankruptcy proceedings. *See Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013) ("As required under 28 U.S.C. § 1738, the Full Faith and Credit Act, we apply Nevada's issue preclusion law to determine the issue preclusive effect of the final state court judgment."). Issue preclusion

prevents re-litigation of an issue of fact or law that was decided in a prior proceeding. *See Villamar v. Hersh*, 37 F. App'x 919, 920 (9th Cir. 2002); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.") (citation modified). Despite Ms. Hurst-Castl's vigorous protestations to the contrary, the State Court Decision finally decided the Loan and subsequent transfers were valid. Therefore, Ms. Hurst-Castl's attempts to relitigate those issues are an unlawful collateral attack.

Based on the record, the bankruptcy court identified and applied the correct legal standard under § 362(d)(4). Furthermore, the bankruptcy court made the required finding that "[t]he filing of this [bankruptcy petition] was part of a scheme to hinder, delay, or defraud" and supported the determination with logical inferences based on the evidence presented. Indeed, Ms. Hurst-Castl's lengthy history of state court lawsuits and bankruptcy filings affecting the Property, and her long history of default without payment, sufficiently support the court's finding that Ms. Hurst-Castl filed this fifth bankruptcy petition as part of a scheme to delay, hinder, or defraud. Accordingly, the bankruptcy court did not abuse its discretion in granting Long Term in rem relief from the automatic stay pursuant to § 362(d)(4).

17

**B.      The bankruptcy court did not abuse its discretion in denying reconsideration.**

The Federal Rules of Civil Procedure recognize two types of motions to obtain post-judgment relief: a motion to alter or amend judgment pursuant to Civil Rule 59(e), and a motion for relief from judgment pursuant to Civil Rule 60 made applicable to bankruptcy cases by Rules 9023 and 9024. *See Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 539 (9th Cir. BAP 2004), *aff'd*, 182 F. App'x 708 (9th Cir. 2006).

Under Civil Rule 59(e), reconsideration is appropriate if the court: "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J*, 5 F.3d at 1263. Under Civil Rule 60(b), the bankruptcy court can relieve a party from a final order for several reasons including, "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence," fraud, or "any other reason that justifies relief."

Ms. Hurst-Castl filed a motion objecting to the In Rem Relief Order along with both a motion to vacate and a motion to reconsider. None of the motions referred to Rule 9023 or 9024 (or the rules they incorporate). Indeed, the motions cited no relevant authority. The bankruptcy court denied the motions after finding that Ms. Hurst-Castl was merely rehashing the same arguments already presented. *Wall St. Plaza, LLC v. JSJF*

*Corp. (In re JSJF Corp.)*, 344 B.R. 94, 103 (9th Cir. BAP 2006), *aff'd and remanded*, 277 F. App'x 718 (9th Cir. 2008) (litigants cannot use a motion for reconsideration to present a new legal theory for the first time, to raise legal arguments which could have been made in connection with the original motion, or to rehash the same arguments already presented).

On appeal, Ms. Hurst-Castl provides no cogent argument and fails to identify specific evidence in the record that demonstrates the bankruptcy court's Order Denying Motions to Vacate was an abuse of its discretion.

## CONCLUSION

Based upon the foregoing, we AFFIRM.[13]

---

[13] On July 24, 2025, Ms. Hurst-Castl filed a supplemental brief that included alleged "new evidence" and a motion to strike appellee's responsive brief. BAP ECF No. 23. All relief requested is DENIED. Relatedly, Long Term moved to strike Ms. Hurst-Castl's supplemental brief. BAP ECF No. 26. Generally, an appellate court will not consider facts outside the record developed before the trial court. *U.S. ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). Because Ms. Hurst-Castl seeks to present new evidence on appeal that was not before the bankruptcy court, we GRANT Long Term's motion to strike and will not consider the documents attached to Ms. Hurst-Castl's supplemental brief. Even if the documents were considered, they would not change the outcome of this appeal.

The additional relief requested in Ms. Hurst-Castl's October 16, 2025, motion to vacate is DENIED.

Finally, after this matter was submitted to the Panel for decision, Ms. Hurst-Castl filed a document on November 3, 2025, captioned supplemental notice of clarification regarding two-year bankruptcy filing bar, and another document on November 4, 2025, captioned post-oral argument supplemental notice regarding appellee's failure to establish standing. The Panel will not consider the untimely, unauthorized filings. However, even if considered they would not change the outcome of this appeal.